

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

TM:SD

April 23, 2014

<u>By ECF</u>

The Honorable Kiyo A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza
Brooklyn, New York 11201

      Re:    <u>United States v. Samuel Granados-Hernandez</u>
            <u>Criminal Docket No. 11-297 (S-5) (KAM)</u>

Dear Judge Matsumoto:

      On July 24, 2012, the defendant Samuel Granados-Hernandez pleaded guilty pursuant to a plea agreement to count one of a superseding information, charging him with sex trafficking, in violation of 18 U.S.C. § 1591(a)(1). The defendant is scheduled to be sentenced by Your Honor on April 28, 2014.

      The government respectfully submits this response to object to the Pre-Sentencing Report ("PSR") and to respond to the defendant's sentencing submission, dated September 4, 2013.

I.     <u>Factual Background</u>

      As the PSR describes in some detail, the defendant participated in a sex trafficking conspiracy from October 2000 to April 2011. (PSR ¶¶ 1-26). Over approximately ten years, the defendant began romantic relationships with females in Mexico and then lured them to the United States with the false promise of a better life. Each of these victims were transported by the defendant with the intent that she would engage in prostitution. (PSR ¶ 4). Once in the United States, the defendant forced victims into prostitution by threats, coercion and violence. For each of the victims, the defendant, and his co-conspirators, kept all of the proceeds from the prostitution.

As part of his plea agreement, the defendant pled guilty to sex trafficking Jane Doe #6, #7 and #8. (PSR ¶ 1). The defendant's conduct towards each of these victims shows the same pattern of criminal conduct and abuse. For example, between 2009 and 2010, the defendant recruited Jane Doe #6 in Mexico City and shortly after, he began a relationship with her and moved her into his parents' home in Tenancingo, Mexico. (PSR ¶ 28). After a few months, the defendant suggested that they move to New York to find work. (PSR ¶ 29). Soon after her arrival to New York, the defendant insisted that Jane Doe #6 work as a prostitute. (PSR ¶ 33). When Jane Does #6 refused, the defendant threatened Jane Doe #6's mother. Id. Jane Doe #6 worked for the defendant in multiple states until her arrest in August 2010. (PSR ¶ 35).

Similarly, the defendant recruited Jane Doe #7 in 2010 and shortly thereafter moved her into his family's house in Tenancingo. (PSR ¶ 36). Soon after, the defendant insisted they move to New York to find work. (PSR ¶ 38). After their arrival to New York, the defendant told Jane Doe #7 that because of a debt owed to the smugglers, she had to work as a prostitute. (PSR ¶ 41). Notably, approximately one week after she began working as a prostitute, Jane Doe #7 became pregnant. (PSR ¶ 43). The defendant became violent, including choking and hitting the victim, and forced her to have an abortion. Id. In May 2011, Jane Doe #7 was arrested along with other Granados family members. (PSR ¶ 44).

In May 2010, the defendant recruited Jane Doe #8 and smuggled her into the United States shortly thereafter. (PSR ¶ 45). Similar to his other victims, Jane Doe #8 was forced into prostitution and worked for the defendant as a prostitute in New York, Maryland and Virginia. (PSR ¶ 47). In January 2011, while working for the defendant, Jane Doe #8 was arrested in Virginia on prostitution charges. Id.

On April 19, 2011, as part of an ongoing investigation into the Granados Sex Trafficking organization, Homeland Security Investigation agents arrested the defendant in Union City, New Jersey. (PSR ¶ 78).

II.   Objections to the Pre-Sentence Report

In the plea agreement, the defendant's United States Sentencing Guidelines ("Guidelines") range was estimated to be 188 to 235 months' imprisonment. See plea agreement ¶ 2. The United States Probation Department, however, calculated that the applicable guidelines range is 262 to 327 months imprisonment. (PSR ¶ 168). The disparity between the estimated Guidelines range in the plea agreement and the Guidelines calculation in the PSR is based, in part, on the fact that the PSR and the plea agreement mistakenly afforded the defendant a three-level enhancement for Jane Doe #7 sustaining a serious and life threatening injury pursuant to

Section 1B1.1.  (PSR ¶ 122).  Specifically, the Guidelines define the term as "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation."  While the government contends that Jane Doe #7 sustained emotional and physical injury as a result of the defendant's conduct, because the injury did not rise to the level as defined in Application Notes "J" and "L," the enhancement does not apply.  Accordingly, a three-level enhancement for serious or life threatening bodily injury as to Jane Doe #7 should not be applied to this defendant.

In addition, the PSR affords a two-level enhancement for the defendant's recruitment of Jane Does #6, #7 and #8 a vulnerable victims pursuant to U.S.S.G. 3A1.1.  Based on the facts of this case, the government cannot prove that the victims qualify as "vulnerable victims."

Accordingly, the government agrees with the defendant that the applicable advisory Guidelines range is 135 to 168 months.[1]  As the Court is aware, pursuant to the parties plea agreement, the government has agreed not to take a position as to where within the Guidelines range the sentence should fall or advocate for a sentence above the applicable Guidelines range.  See Plea agreement ¶ 4(b) and (c).

III.     Discussion

The defendant argues that because of the defendant's personal and family history, he should be sentenced to the statutory minimum of 180 months.  See Sentencing Memorandum, ("Memorandum") p. 9, September 4, 2013.  Notably, however, none of the circumstances of the defendant's family, which include growing up in poor economic circumstances distinguish his offense from the typical case.  Indeed, the defendant is similarly situated to all defendants who engage in criminal activity, in part, out of financial necessity.  See, e.g., United States v. Vera Ramos, 296 Fed. Appx. 201, 203-04 (2d Cir. 2008) (affirming Guidelines sentence despite defendant's "difficult upbringing" and "very substantial family responsibilities'" and noting district court's observation that such circumstances are "almost universal" among defendants in similar cases).  Accordingly, since courts are not to consider a defendant's "disadvantaged upbringing" pursuant to U.S.S.G. § 5H1.12, the defendant's request for leniency on this basis is without merit and should be denied.

---

[1] The defendant's Guidelines range of 151 to 188 months asserted in his Memorandum mistakenly did not include the global disposition adjustment that was afforded to the defendant as part of his plea agreement.

3

IV.        Conclusion

In sum, the defendant played a significant role in a cruel family business of recruiting young women to force them into prostitution. The government respectfully requests that the Court consider the defendant's extensive criminal conduct involving numerous victims in fashioning an appropriate sentence that will reflect the seriousness of the offense and deter criminal conduct.  See 18 U.S.C. § 3553(a).

                                                    Respectfully submitted,

                                                    LORETTA E. LYNCH
                                                    United States Attorney

                                    By:             _____
                                                    Soumya Dayananda
                                                    Assistant U.S. Attorney
                                                    (718) 254-7996

CC: Clerk of the Court (KAM) (By ECF)
     Len Kamdang, Esq.  (By ECF)